Alright, we appear to have everyone in the room. So, our second case for this morning is Bradley Hotel v. Aspen Insurance, No. 21-1173. And we should begin with Mr. McCousis. Thank you, Your Honor. May it please the Court, Counsel, my name is Stephen McCousis, and I represent the interests of Plaintiff Appellant, Bradley Hotel Corporation. We're here today on appeal of Judge Recourse's dismissal of our complaint for breach of contract and for declaratory judgment against Aspen Specialty Insurance. The issue before the Court is similar to every other case on the Court's docket today, involving the interpretation of business income coverage in regards to COVID-19 and Governor Pritzker's executive orders of closure. The threshold issue is whether it is reasonable for a layman, ordinary policyholder, to review the Aspen Specialty property policy as a whole and determine whether it covers the type of structural alterations or tangible property, as my opponent calls it, or also, does it include coverage for the type of more intangible causes of loss, such as Governor Pritzker's executive orders. So, excuse me, Mr. McCousis, with respect to that intangible point, I'm struggling with how the Governor's orders inflicted a physical loss on your property. And I'm fine with focusing on loss as opposed to damage, because I think we can all agree that there is no evidence of physical damage here. But, okay, physical loss. I just don't see how Governor Pritzker's orders did anything physically to your property. I understand. And whether or not physical loss actually occurred really depends upon the definition of the word physical that you use. But more importantly, it really requires a review of the actual causes of loss special endorsement form to determine what definition the policy intends to use. And if we look at the cause of loss special form, it's on the docket, it's document 1-1. It begins on page 34. It's the first exhibit to our complaint. It's part of the policy, which is the first exhibit to our complaint. Covered causes of loss is noted to be direct physical loss unless the loss is excluded or limited in this policy. We know from Illinois case law that if a peril or a cause of loss is excluded under the coverage form, that means it must have been intended to be included, but for that exclusion. Wait a minute. How do we know that? Your argument, the argument seems to be in essence that an insurer cannot write a policy with, in essence, belts and suspenders. We have broad coverage language, may or may not apply here. We don't want to include this particular situation, so we'll write an exclusion. Are you saying that that's just rejected by Illinois law? The Illinois law says if you put in an exclusion, then you are necessarily implying you had coverage under the coverage provision? That's right. If that exclusion was not present in the policy, that it would have been included within the coverage form. But I don't see Illinois courts doing that. I mean, I think there are plenty of instances in which just for the sake of clarity, or as Judge Hamilton just put it, belt and suspenders, they'll put the exclusion in just in case some court comes along and thinks there's coverage. I mean, they're going to argue in the alternative, just as we're seeing in all of these cases. They're going to say, first of all, it's not within the scope of coverage. That's the clean hit that they would like to have. But even if it is within the scope of coverage, we've now excluded it. So what Illinois case says you can't do that? I think that's happened in many cases. Let me give you an example within this actual coverage form of what I'm talking about. I think that would perhaps be a best illustration of what I'm trying to say. If we look at the actual coverage form, there's numerous exclusions that are in boldface type that are easy for a policyholder to read. They can understand that the policy is going to include coverage for losses caused by war and military action or from wear and tear. But if we look at page 35 of the exhibit, there's an exclusion for losses caused by the failure of utility services, essentially power outage coverage. And the form states that the failure of power, communication, water, or other utility service supplied to the described premises, however caused, if the failure originates away from the described premises. The exclusion goes on to state failure of any utility service includes lack of sufficient capacity and reduction in supply. This is an exclusion that's basically stating there's no structural alteration to the property in question. There's no structural damage to the circuit breakers, to the wiring, the light switches. They still go off and on. There's an issue that's occurred off premises such that electrical power, intangible electrical power, is no longer coming to the building in question. Why is electrical power intangible? That seems odd. I mean, never mind. It can't be touched. Electrical power can't be touched. It's not palpable. I think we could electrocute you if you touched it. The electrons are going through. That's true. The Merriam-Webster definition of the word intangible actually uses electrical power as an example in its sentence. And it says that electrical power is completely intangible. But the point is that there's no... Could you address the question which was about Illinois authorities supporting your claim that the exclusion implies coverage? Yes. Yes. We see that it's cited to Wells v. State Farm and Casualty Insurance Company, 2021, Illinois, at 5th, 190460, paragraph 27. It's page 23 of our reply brief. Now, this particular special form policy also goes on to identify these other types of losses that do not require structural alteration of the property. In fact, they're relied upon by Aspen Specialty Insurance in its argument that there is no coverage. Specifically, if we turn to page 36 of document 101, delay, loss of use, or loss of market. When we're talking about loss of market, we're talking about diminution of value impacted by some type of peril. And that is one of the more common intangible losses that are excluded by policies. Generally, when we talk about these type of consequential damages, it seems as though many courts take it as a given that insurance policies are not going to cover consequential damages. But the reason for that is because they are in a specific exclusion in these special form endorsements. The other exclusion relied upon by Aspen Specialty is another example of intangible loss. And that would be the very first exclusion on the policy regarding ordinance or law. The enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any property. So, Mr. McCousins, if I recall correctly, this is the point at which you argue that because this was a governor's executive order, it doesn't fall within the ordinance or law exclusion? And I have to say, I found that pretty hard to swallow. The governor issued those orders under authority granted to him by legislation in Illinois, the Illinois Emergency Management Agency Act. There are penalties for violating those orders. And whether it's the president's executive orders or whether it's the governor's, I think they'd be shocked to think that this was just so much advice on a piece of paper. As we noted in our brief, we believe the difference, there's a distinct difference between ordinance and laws that are established by legislatures that empower certain legislative bodies versus an executive order. That is a power that is given to a governor to act. Is it your position that all administrative agency regulations also fall outside this ordinance or law exclusion? No, I am not. Those are codified by legislative bodies. But more importantly, in this particular policy, the ordinance and law coverage is actually purchased back. Sorry, what? You said it's purchased back? Yes. Certain exclusions within an insurance policy can actually be purchased back by an insured. In other words, while the exclusion may appear in the special form endorsement, the carrier may give an insured the option to obtain coverage for that peril which was formerly excluded. Did you do that? Yes. If you look at paragraph, if you look at page 53 of document 101, it's in large boldface font, ordinance or law coverage. Now the coverage is broken down into various points, but as it states clearly in paragraph B, it provides coverage for ordinance or law that regulates the demolition, construction, repair buildings, or establishes zoning or land use requirements at the described premises. The ordinance or law coverage is directly addressing the peril or the cause of loss that is excluded under the ordinance or law exclusion on the special form endorsement.   I'm sorry. I'm sorry.   I'm sorry.  I'm sorry. I'm sorry. I'm sorry. I'm sorry. No, I'm going to have to narrow this in my own opinion here and looked at it about the term physical injury. Which is what I'm looking at, something to the building. And that would connote damage to tangible property causing an alteration in appearance, shape, color, or other material dimensions to the building. And this is what I look at is what the issue is here. And we get into all the other hypotheticals, which are a lot of them. Yeah, there's other ways to have losses and to limit business and lots of things, but that's the way I thought this was more confining when we're talking about the physical injury damage to the facility, the building. Yeah, if the electricity goes off, or if the lighting disappears, that's an argument that that might also be covered that that isn't what we have here. And we're focused on the building itself. At least I am. And there isn't any damage. That's language directly from the elder opinion, which I feel is not applicable to this case. As I noted at the beginning, everyone's focus when it comes to the coverage, whether or not coverage is available under these policies. Everyone seems to be focusing on the phrase direct physical loss of direct physical loss to the reality is all of these policies are different. I mean, you have four cases on your docket today involving four different carriers, some carriers are using forms that are copyrighted by insurance services office. Some are using their own proprietary forms. These policies have to be reviewed individually and on a whole basis that elder opinion wasn't even analyzing the same coverage form that we have before you. It was written by travelers on a travelers proprietary form, not an ISO endorsement which is what before you today. It involved a commercial general liability policy and not a commercial property policy involved completely different language. As your honor noted that language in that case was physical injury to tangible property. That's not even though that's not the language that we're using here today. I would say, I mean, use elder as a comparison. The word physical is commonly used in health insurance policies and health insurance policies of physical refers to an office visit with your primary care physician, the finding the word physical in that context in this particular property policy would make no sense. The key is to look at really these various losses or excluded losses that identified. If they were not excluded, they would apply. And they would apply, despite the fact that they do not cause any structural alteration to the insured property. Well, there weren't any. Is that, that's the other point. There was no structural alteration to the property. I do not disagree. The issue was that our clients lost the use of their facility for their underwritten purpose with you can live loss of use for lots of reasons. And that's the problem with that phrase, I guess, loss of use is just has unlimited brackets, as far as I'm concerned. That's why I try to focus on damage physical damage to the property. And everybody, at least you want to seem to avoid that because that's just too simple. It's not the language that's an issue in the policy, we didn't draft it the carrier did the carrier chose to draft a policy that states it's providing coverage for direct physical loss, unless the loss or peril is specifically excluded under the coverage form. They chose to write a broad policy for whatever reason. So if you'd like to save a little less than a minute. This would be a good time. I will. Thank you. Certainly, Miss sites. Good morning and may it please the court Virginia sites for a Pele Aspen. The hotels partial loss of use of its property, following the Illinois governor's coven 19 executive orders is not direct physical loss of or damage to property under the policy at issue. And I'd like to start by addressing my opponent's argument that you can essentially engineer coverage from the exclusions in this policy, Illinois law does not allow the leveraging of an exclusion to create coverage it asks first whether an insurance policy provides It then asked turns to the question of exclusions if that coverage is provided, and particularly where an insurance policy is as the court knows construed against the drafter it makes eminent sense for an insurer to do a belt and suspenders approach with exclusions to make clarifying exclusions to demonstrate that certain kinds of causes of loss are absolutely excluded. Here, the insurer did that with a loss of use exclusion, and it excludes loss of use as a cause for coverage. That is when loss of use is independent of direct physical loss of or damage to property, it is not a covered cause of loss. So can I take you to my hypothetical from before because it does seem to me that we need to give a different meaning to the word loss for the meaning that we give to the word damage because the policies actually all of these policies we see today include both of those and we have a rule against superfluous language that we need to pay attention to. And secondly, I can imagine physical loss being what I will call complete deprivation of the ability to use the property. Partial deprivation that's the same over time is a different question and partial deprivation in the sense that it's complete for two months let's say and then the owner is able to go back in and use it somehow is also a different situation. So perhaps you could comment on that. I agree, Your Honor, and I also agree with my friend from Zurich's answer to that hypothetical, which is that loss, of course, must mean something different than damage. The former loss physical loss involves either complete dispossession or total destruction. So, for example, complete dispossession forever or complete disposition dispossession for some period of time. Complete dispossession when the property is utterly uninhabitable and unusable is under the case law covered by physical loss. So let me give you another hypothetical about that. Suppose, you know, every now and then in Chicago we get tornadoes, not too often, but suppose a tornado comes through and dumps a huge amount of debris in front of the hotel. It doesn't touch the hotel because tornadoes are capricious and they don't always damage everything. But people simply can't get in there because there's a physical barrier because of the tornado wreckage. But after enough time, you know, you can hire heavy equipment and you can arrange to get yourself back in. Now, this hotel would be, by my hypothesis, completely deprived because of this event of the ability to use its premises. So coverage there? So, Your Honor, that hypothetical that you just gave is an excellent example of the civil authority coverage in this policy. So that, for example, when you can't get access to your property because of physical loss or damage within a certain radius of that property, which is what your hypothetical posits, there's a coverage for that under this policy. So it takes into account the possibility that physical loss or damage, you know, in the neighborhood essentially of an insured premises could result in coverage under this policy. Yes. But it is an example of, at least I'm imagining it going right up to the door, but somehow miraculously not hurting the hotel. It is an example of a complete deprivation of use for a limited period of time. And I wonder why that doesn't also apply to the rest of the coverage. Well, the complete deprivation that you're talking about, the complete disposition of any use of the property, is a key element of what distinguishes it from a direct physical loss of the property. Because in your hypothetical, no one could go in or out, no one could use the property for any purpose. And that seems to us to be a qualitative difference from a situation where, as here, you have a partial use of the property. A sort of temporary partial loss of use does not qualify as a physical loss. If I can follow up on this. I understood, I think your answer about civil authority coverage, but it's not clear to me why that would be necessary. In Judge Wood's hypothetical. If I could throw out a slightly different one, if loss of use is not covered, if it's excluded, what happens if, under your reading, if there's a fire in the hotel that causes it? And it can't be used for a month. Is that a loss of use? If there's a fire in the hotel, there is the threshold requirement of some physical damage is satisfied. And then at that point, the business interruption coverage would kick in to the damages of the losses occurring as a result of that physical damage. Okay. And what about the loss of use exclusion? So the loss of use exclusion excludes only damages that have as a cause of loss, the loss of use itself. So it's not, loss of use is covered when it's a consequence of direct physical loss or damage, but it's excluded when it's untethered to physical loss or damage. Itself, it becomes a cause, an alleged cause of loss, and that's what the hotel is trying to do here. It's trying to say that untethered from any physical loss of or damage to its property, loss of use itself is a cause of damage. We don't think that's a logical or permitted reading of the policy. And so, in fact, the exclusion is doing work. The work it's doing is excluding loss of use as a cause of damage when it's unrelated to any physical loss of or damage to the property. I'd like to raise something that hasn't come up so far this morning, and that is other policy provisions that support our reading of the meaning of the phrase direct physical loss of or damage to property, and that's what's called the restoration clause. The time for coverage starts after direct physical loss of or damage to property and lasts under this policy until the property is rebuilt, repaired, or replaced with reasonable speed and similar quality, or when business is resumed at a new location. These words are naturally read to refer to physical occurrences to fixing physical damage or replacing destroyed or stolen property with property of a similar quality. And in addition to that, the policy also contains, as we've been discussing, loss of use exclusion. So if you look at the policy as a whole, it becomes quite clear that this kind of physical alteration in the condition of the property is essential as a prerequisite to coverage. The argument that the meaning of the policy is unclear and that physical loss can be stretched to include loss of use, which essentially read the requirement of a direct physical loss, a tangible alteration out of the policy, and we think ignore the contrary as well as physical damage. And in one, the first set of policies covered only quote loss to tangible property. The other set covered physical loss to tangible property, and the court held that intangible losses could be covered under the first set of policies, but not close coverage for intangible losses that might otherwise be covered in the absence of the term. And we read this court's opinion in Windridge to rely on elders definition of physical in interpreting the meaning of physical loss under Illinois law in a property insurance policy. Windridge, there was no question in Windridge about physical damage. The hail. The issues actually decided in the case were quite different. Can I ask you to address plaintiff's point concerning the ordinance, the ordinance or law exclusion, and what he says was the purchase back of such coverage. Your Honor. We weren't the briefs did not address the question of whether the coverage was purchased back and I'd need to submit a supplemental brief on that question as I'm not prepared to address it. I do think the presence of apologies. The presence of that exclusion. The argument made in our friend my friends reply brief is that my interpretation of that provision renders the word ordinance superfluous, and we don't think it does we think it is the use of the word ordinance simply clarifies that local government laws are included in this very broad concept of law, which reaches enforceable directives of the legislative executive and judicial branch. I'm looking at the, at the, the purchase back coverage at page 53 of the policy. And it appears to require physical damage to the property. And I might add perhaps we can have both parties within one week, submit, maybe just letters, they don't have to be elaborate briefs on it, we can just get some supplemental filings from for that. Okay. Thank you. I would like to briefly address a couple of other points in the reply brief that I thought were raised for the first time there. The hotel argues that the definition of property at a different section of the policy the building and personal property coverage form includes use interests and then that and argues that that suggests that loss or damage to intangible property must be covered. But first we think this argument ignores a threshold requirement of direct physical loss or use that separate from the definition of property. But second, we also think it wouldn't be reasonable to eliminate the requirement of direct physical loss of or damage to property, based on a definition of property in a separate section of the policy that's focused on the hotels interest as a tenant. And finally, we think this definition of property can comfortably be reconciled with the retirement that loss be physical as tenants use interest in physical objects like steel pipes, for example, could suffer a physical loss if those objects were damaged. So, ultimately, we don't think that argument can carry the weight the reply brief places on it. The hotel also argues that the hotel and in endorsement refers to tangible property and that this reference would be unnecessary. If the rest of the property policy covered only tangible property. This argument we think has two problems again. It ignores that the requirement of physical loss of or damage to property is a threshold requirement. And second, in the section dealing with guest property that property is defined to include other tangible property, but the coverage provision says that Aspen will cover loss of or damage to guest property and doesn't include the modifier physical. So in this particular section of the policy the word tangible is doing the work of limiting coverages to losses of physical property. And again, for that reason we don't think this provision can bear the weight that the reply brief assigns to it. Your Honor's property insurance policies, protect the insured against direct physical loss of or damage to their property by theft or complete destruction. They cover rebuilding repair and replacement but only until that physical loss or damage is repaired or is repaired or placed or the property is replaced with similar quality property. But they do not ensure against all losses, only those resulting from direct physical loss or damage. The court has no further questions we simply asked that the judgment be affirmed. All right, thank you very much. Mr. Macuses I'll give you a full minute for rebuttal. Thank you, Your Honor. The first thing I'd like to address is the issue of loss of use and how that would apply with how that exclusion would actually apply in this circumstance. The loss of uses exclusion does not include anti concurrent language. In other words, if there's another peril that causes loss in addition to loss of use, then there would be coverage for the damaged or lost property. You know, in this instance, business income itself is essentially a loss of use, it's an intangible property right, especially in this day and age, there's currency has really become almost electronic. I mean, credit cards are becoming out of date. I'm correct though that the Bradley Hotel was furnishing in room service and and takeout food service is that right. Yes, but I mean that goes to a question more of mitigation of damages than anything else. I mean, the core issue go to the fact that they aren't completely dispossessed of the property that they can't they're making a economically useful use out of it. Of a portion of it true, but not the entire purpose for which the policy was underwritten. The second page of the policy page 292 and document one on one notes that the business description is a hotel and a motel businesses are not underwritten by insurance carriers within a vacuum. The carrier understood what type of business it was insuring specifically in this case, although it's not the complete description is not present a hotel and motel with a restaurant and bar and a convention. All right, I think we're going to have to leave it there. So thank you very much. Thank you for your time. And thanks as well to insights the court will take this case under advisement.